# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **Stallion Heavy Haulers, LP,** § | | |
| § | | |
| **Plaintiff,** § | | |
| v. § | CIVIL ACTION NO. | |
| § | | |
| **Lincoln General Insurance** § | SA-09-CA-0317-FB (NN) | |
| **Company ,** § | | |
| § | | |
| **Defendant.** § | | |
| § | | |

## REPORT AND RECOMMENDATION

This report and recommendation addresses the defendant's motion for partial summary judgment.[1] I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or to aid the district court by recommendation where my authority as a magistrate judge is statutorily constrained.[2] After considering the motion and supporting evidence, I recommend denying the motion for partial summary-judgment .

**Nature of the case**. This case involves a dispute between two insurance companies. Each insurance company settled an underlying state-court lawsuit. One

---

[1]Docket entry # 38.

[2]Docket entry # 44.

insurer settled for $750,000.00; the other insurer settled for $2,225,000.00. The insurer that settled for $750,000.00 seeks indemnification from the insurer that settled for $2,225,000.00.

The plaintiff in this case — Stallion Heavy Haulers LP (Stallion) — is a trucking company that specializes in transporting machinery and oilfield equipment. Stallion is insured by Steadfast Insurance Company (Steadfast). Steadfast is the one of the two insurance companies involved in this dispute. Steadfast is the real party in interest.

Stallion was hired to transport an oilfield drilling rig to Nacogdoches County in September 2006. Stallion hired Rig Runners Inc (Rig Runners) to assist in the transportation of the oilfield drilling rig. Rig Runners provided extra trucks and drivers. Rig Runners is insured by the defendant in this case — Lincoln General Insurance Company (Lincoln) — the other insurance company involved in this dispute.

On September 9, 2006, an accident occurred during the transportation of the oilfield drilling rig. Prior to the accident, three Rig Runners drivers parked trucks along the shoulder of the highway near the entrance to the work site where the oilfield drilling rig was transported. A Stallion truck, leaving the work site and entering the highway, drove from behind the Rig Runners trucks and onto the highway into the path of Billy and Vicki Taylor's motorcycle. The Taylors struck the truck and were seriously injured.

The Taylors sued several defendants in state court in Rusk County: Stallion,

2

Stallion's work site supervisor, Rig Runners, the three Rig Runners drivers who parked on the shoulder of the road, the driver of the truck that drove into the path of the Taylors' motorcycle, and an engineering consultant. Steadfast settled the Taylors' lawsuit on behalf of Stallion and its employees. Lincoln settled the lawsuit on behalf of Rig Runners and its employees.

In this lawsuit, Steadfast —through Stallion — maintains Stallion is an insured under Rig Runners's insurance policy — the policy issued by Lincoln.[3] Steadfast maintains the Lincoln policy covered Stallion, and insists Lincoln owed Stallion a duty to defend and indemnify in the state-court lawsuit. Steadfast seeks from Lincoln recovery of defense costs and indemnification payments paid out on behalf of Stallion.

**The Lincoln policy**. Here are the applicable Lincoln policy provisions:

1. Who Is An Insured

    The following are "insureds":

    a. You for any covered "auto".

    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow…

    \*\*\*

    e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.[4]

---

[3]Docket entry # 1.

[4]Docket entry # 38, app'x pp. 28-29.

The policy includes a Texas Additional Insured endorsement that provides the following:

> A. Who Is An Insured (Section II) is amended to include as an "insured" the person(s) or organization(s) shown in the Schedule, but only with respect to their legal liability for acts or omissions of a person for whom Liability Coverage is afforded under this policy.[5]

The parties agree about what the policy provisions mean — that a party is an "insured" under these provisions when the party is alleged to be or held to be vicariously liable for the conduct of the named insured — but disagree about whether the summary-judgment evidence shows Stallion is vicariously liable for Rig Runners's conduct.

**Lincoln's motion**. Lincoln argued that Stallion exercised insufficient control over Rig Runners for Stallion to be held liable for Rig Runners's conduct so as to constitute an "insured" under the Lincoln policy. Thus, Lincoln contended it has no duty to indemnify Stallion. Lincoln asked for summary judgment on Stallion's claim for indemnification.

**Texas law about independent contractors**. Under Texas law, "an employer is generally not liable for the acts of an independent contractor unless the employer exercises sufficient control over the details of the independent contractor's work."[6] "[A]n employer can be held vicariously liable for the actions of an independent contractor if the employer retains some control over the manner in which the contractor performs the

---

[5] Docket entry # 38, app'x, p. 189.

[6] *Fifth Club v. Ramirez*, 196 S.W.3d 788, 790 (Tex. 2006).

4

work that causes the damage."[7] "The supervisory control must relate to the activity that actually caused the injury…."[8] "The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy."[9] These principles applied here, Stallion is an insured under the Lincoln policy if the summary-judgment evidence shows Stallion exercised some control over the manner in which Rig Runners performed the work that caused the Taylors' injuries. The work that caused the Taylors' injuries was parking the three Rig Runners trucks on the shoulder of the highway, such that the driver who drove into the Taylors' path could not see the Taylors.

**The summary-judgment evidence**. Lincoln relied on depositions from the Taylors' lawsuit; specifically, the depositions of Stallion's work-site supervisor and the three Rig Runners drivers. Stallion's work-site supervisor testified that the Rig Runners drivers were not under his control until he called them to the work site.[10] He also stated

---

[7] *Fifth Club*, 196 S.W.3d at 791.

[8] *Coastal Marine Serv. of Tex. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999).

[9] *D.R. Horton-Texas v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009).

[10] Docket entry # 38, app'x p. 226 (Bell deposition):

Question: But it's your testimony that those men – those Stallion employees…even though you're the operator on this rig, were not under your supervision when they parked out there on the highway?

5

that the Rig Runners drivers could choose where to stage until he needed them.[11] He testified that he told the Rig Runners drivers to park on the shoulder of the road and wait, but the drivers decided where to park.[12]

---

               \*\*\*

Answer: They were under my supervision when I called for them to come in to my location.
Question: Well, what about the 30 seconds before you called them and they're parked out there waiting, are they under your supervision then?
Answer: They're not — no, sir, not till I call them in.
Question: Whose supervision are they under, then, if they're not under your supervision while they're parked waiting?
Answer: They're under their own, sir.
Question: Self-supervision?
Answer: Yes, sir.
Question: Okay. But the moment you call them with a CB, right?
Answer: Yes, sir.
Question: They are under your supervision?

[11]Docket entry # 38, app'x p. 228 (Bell deposition):

Question: So, typically you're not telling them about a staging or parking area that you're aware of, correct?
Answer: Most of the time, they make that decision on their own, sir.
    \*\*\*\*
Question: …Typically, you are not telling them about a specific location to park or stage that you believe safe, correct?
Answer: No, sir, I don't.
Question: Typically, what you're telling them is, Stay out of the way, or words to that effect?
Answer: Words to that effect.

[12]Docket entry # 38, app'x p. 229-30 (Bell deposition):

Question: …But it's your testimony here today under oath that you

6

The Rig Runners drivers testified as follows: The driver of the first truck — the truck parked closest to the work-site entrance — testified that Stallion's truck-pusher told him to wait on the shoulder of the highway, but the truck-pusher did not specify where to wait.[13] The first driver stated that he made the decision about where to park on

---

|  |  |
|---|---|
|  | told at least one driver — |
| Answer: | Yes, sir. |
| Question: | — it might not have been Jim Bowling [the driver of the truck parked closest to the work-site entrance], but you told at [l]east one of drivers on one of those days to park on the shoulder? |
| Answer: | Yes, sir. |
| Question: | Did you tell a driver to park on the shoulder on September 9th, the Saturday [the date of the Taylors' accident]? |
| Answer: | I don't recall that, sir. I don't know. |
| Question: | Did you tell them where to park on the shoulder? |
| Answer: | No, sir, I did not. |
| Question: | In other words, there's a long shoulder there. |
| Answer: | Yes, sir. |

\*\*\*

| Question: | Did you give any of these drivers any specific instruction about where in the shoulder, you know, hundred yards from County Road 731, quarter of a mile, a mile, any specific directions as to where on the shoulder they should park? |
|---|---|
| Answer: | No, sir, that I can remember, I did not. |
| Question: | Did you tell them where not to park? |
| Answer: | No, sir, not that I know if. |

[13]Docket entry # 38, app'x p. 238-39 (Bowling deposition):

| Question: | When — when you neared the collision scene, … you made contact with the truck pusher? |
|---|---|
| Answer: | Correct. |
| Question: | And what did he tell you concerning the parking of your tractor? |

the shoulder.[14] The driver testified that nothing kept him from choosing a different location to park and wait for entry to the work-site.[15] The drivers of the second and third trucks parked on the shoulder of the highway also testified that they made the decision about where to park and wait for entry to the work-site.[16]

---

| | |
|---|---|
| Answer: | That he had a truck on location now, to pull off on the shoulder on the side of 21 and wait for that truck to get unloaded and to come off the county road before one of us could come in. |
| Question: | Okay. Did he tell you anything else? |
| Answer: | No. |

[14]Docket entry # 38, app'x pp. 240 & 243-45 (Bowling deposition):

| | |
|---|---|
| Question: | You made the decision without instruction from anyone as to where to park on the shoulder, that is 10 yards from County Road 823, 50 yards, 100 yards, what — whatever distance it was, that decision was your decision? |
| Answer: | Yes. |

[15]Docket entry # 38, app'x pp. 241-42 (Bowling deposition):

| | |
|---|---|
| Question: | My question to you is there was nothing preventing you from parking your tractor-trailer at or near where the school bus was — is in Exhibit 5 on September 9th, was there? |
| Answer: | There was nothing that kept me from parking my truck, no. |
| Question: | Right. And had you done that, that still would have been complying with or consistent with the Stallion representative's instructions, park on roadway? |
| *** | |
| Answer: | Yeah. |

[16]Docket entry # 38, app'x pp. 251-54 (Lee deposition) & p. 260 (Luman deposition):

This testimony establishes that Stallion did not control the details of where the Rig Runners drivers parked to wait for entry to the work-site. Because control over where

---

> Lee testifying:
> Question: Did you get instructions from the yard for the September 9th trip?
> Answer: That's what I'm saying. I'm — I'm not sure exactly how that took place, but it's usually one way or the other or both.
> Question: Typically if you do get directions from the yard, you mean instructions from Rig Runners, right?
> Answer: Yes.
> Question: If you do get instructions, do those instructions include telling you where to park or stage?
> Answer: No, that's left up to the driver.
> \*\*\*
> Question: Now, as far as parking is concerned, if —if this customer, Stallion, or another customer that you had told to park your vehicle in a place or on the circumstances that you thought were unsafe, you have the right as the person that controls your vehicle and trailer to tell that person I'm not going to do that —
> Answer: Yes, sir.
> Question: — is that correct?
> Answer: (Witness nods head up and down.)
>
> Luman testifying:
> Question: Okay. When — when you're driving your truck and trailer, you — you are in — in — you're the one that's in charge of the operation of that truck and trailer, correct?
> Answer: Correct.
> Question: Okay. Now, where you park it and how fast you go, those kind of things is something that you control?
> Answer: Yes, sir.
> Question: Okay. If somebody came up and told you to park someplace that you thought was unsafe, you wouldn't do that, would you?
> Answer: No, sir.

the Rig Runners drivers parked — so as to block the views of the Stallion driver and the Taylors — is dispositive of Stallion's indemnification claim, Lincoln is entitled to summary judgment on the claim unless Stallion presents summary-judgment evidence raising a fact question about whether Stallion exercised some control over where the Rig Runners parked the trucks.

**Stallion's summary-judgment evidence**. Stallion characterized the deposition testimony in the Taylors' lawsuit as "contradictory and rife with fact issues on this key coverage provision."[17] Although this characterization is somewhat over-stated, Stallion presented enough contradictory evidence to raise a fact question about Stallion's control over where the Rig Runners drivers parked.

The Stallion work-site supervisor testified that he told the first Rig Runners driver to park on the shoulder of the highway outside the entrance to the work-site.[18] He also

---

[17]Docket entry # 41, p. 7.

[18]Docket entry # 41, ex. B (Bell deposition), p. 67-68:

| | |
|---|---|
| Question: | Mr. Bowling, Jim Bowling, one of the Rig Runners drivers, do you know Mr. Bowling: |
| Answer: | No, sir, I do not. |
| Question: | …Did you tell Mr. Bowling or any other driver, be it Rig Runners or Stallion, to park on the shoulder of Highway 21? |
| Answer: | Yes, I do believe I did. |
| Question: | Okay. So when you told me a little bit ago that your typical or routine instruction is to stay out of the way, you told them that also in this case, didn't you? |
| Answer: | Yes, sir. |

testified that he normally tells the first driver where to park and then the first driver tells later arriving drivers where to park.[19] In addition, the driver of the first Rig Runners truck testified that he took instruction from Stallion: "[W]hen — on a rig move it's pretty

---

| | |
|---|---|
| Question: | But in addition to that, you told Mr. Bowling to park on the shoulder? |
| Answer: | I don't know if I told Mr. Bowling that or not, sir. |
| Question: | Okay. But you do recall telling a driver to park and wait his turn on the shoulder. |
| Answer: | Yes. |

[19]Docket entry # 41, ex. B (Bell deposition), p. 69:

| | |
|---|---|
| Question: | How many of these drivers did you communicate with and tell, Stay out of the way and park on the shoulder? Was that something that you repeated more than one time? |
| Answer: | No, sir. Normally, I would tell the first driver and then he would relate that to the rest of them as they pulled up. |
| *** | |
| Question: | Sure. But what if there's a gap? What if the next driver isn't there when the previous driver leaves? |
| *** | |
| Answer: | After — if they pulled another — like everybody was gone and then somebody else pulled back up? |
| Question: | Yes, sir. |
| Answer: | If it was where I was by my CB radio, it's a possibility, but I was not in my pickup that whole time. My job is out of the ground. |
| Question: | Sure. But it's your testimony here today under oath that you told at least one driver — |
| Answer: | Yes, sir. |
| Question: | — it might not have been Jim Bowling, but you told at least one of those drivers on one of those days to park on the shoulder? |
| Answer: | Yes, sir. |

11

common knowledge, you just — do what the truck pusher tells you. You don't pull on location before they want you."[20] The driver explained that when he neared the work site, he communicated with the Stallion truck pusher via CB radio and was told to park on the side of the road until he was called to enter.[21] Finally, Rig Runners regional manager testified that Rig Runners drivers are expected to take instructions from the

---

[20]Docket entry # 41, ex. C (Bowling deposition), p. 37.

[21]Docket entry # 41, ex. C (Bowling deposition), pp. 40, 53 & 158:

| | |
|---|---|
| Answer: | …And when we come around the — that curve, we were communicating with the truck pusher. And he — he said that two trucks couldn't pass on the county road, to stop on the side of the road and he would let us know when the truck that was unloading at that time was coming out for the next one to come in. |
| *** | |
| Question: | When — when you neared the collision scene, 21 and 823, you made contact with the truck pusher? |
| Answer: | correct. |
| Question: | And what did he tell you concerning the parking of your tractor? |
| Answer: | That he had a truck on location now, to pull off the shoulder on the side of 21 and wait for that truck to get unloaded and to come off the county road before one of us could come in. |
| *** | |
| Question: | …Stallion didn't instruct you on this occasion, did they? |
| *** | |
| Answer: | They basically just said pull off the shoulder and we'll call you as soon as we unload this truck. |

customer's truck pusher after arriving at the work site.[22]

**Genuine issue of material fact**. The foregoing testimony contradicts Lincoln's summary-judgment evidence that the Rig Runners drivers decided where to park because it suggests the drivers parked in the precise location because the Stallion truck pusher directed them to do so. Stallion's summary-judgment evidence may be insufficient under a preponderance-of-the-evidence standard to overcome the Rig Runners drivers' testimony that they chose where to park, but the reconciliation of the testimony is not before the court at the summary-judgment stage. Instead, the question before the court is whether a "genuine dispute as to any material fact"[23] exists.

Here, the relevant material fact is who controlled the decision about where the

---

[22]Docket entry # 41, ex. D (Russell deposition), pp. 76 & 79:

| | |
|---|---|
| Question: | Regardless of — of what is told how to — when to load, where to go, how to get there, you as the district regional manager for Rig Runners, you expect those lease drivers to listen to and follow those instructions coming from your customers, don't you? |
| Answer: | Yes. |

\*\*\*

| | |
|---|---|
| Question: | …And — and again those instructions, where to wait, where to park, they're not coming from you or from Rig Runners' dispatch, correct? |

\*\*\*

| | |
|---|---|
| Answer: | No. |
| Question: | They're coming from Rig Runners' customers? |
| Answer: | Right, right. |

[23]Fed. R. Civ. P. 56(a).

Rig Runners drivers parked, because that fact affects the outcome of Stallion's claim for indemnification.[24] The issue of control is a genuine issue, because if the court draws all reasonable inferences in favor of Stallion, a rational trier of fact could find that the Rig Runners drivers parked their trucks at the precise location because Stallion told them to park along the shoulder, rather than determining on their own where to park after being told to wait.[25] If the Rig Runners drivers parked their trucks at the precise location because Stallion told them to park along the shoulder, Stallion may have had the requisite control to trigger the Lincoln policy provision. In addition, a question exists as to whether being told to pull over and park on the shoulder of the road comprised sufficient supervisory control over the decision about where to park and whether that decision caused the Taylors' injuries.

**Recommendation**. Neither party's summary-judgment evidence is conclusive. The summary-judgment evidence raises a fact question about who controlled the decision to park on the shoulder of the road so as to block the views of the Stallion driver and the Taylors: Either the Stallion truck pusher directed the precise location for the Rig

---

[24]*See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[25]*See Anderson*, 477 U.S. at 248 (describing a material fact as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

14

Runners drivers to park and the Rig Runners drivers parked there because of that instruction, or the Rig Runners drivers chose the precise location after being told to wait until called to the work site. This question precludes summary judgment on Stallion's indemnification claim. I recommend DENYING Lincoln's motion for partial summary judgment (docket entry # 38).

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[26] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de*

---

[26] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

*novo* determination by the district court.²⁷ Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.²⁸

**SIGNED** on May 16, 2011.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

²⁷*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

²⁸*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).